UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CRIMINAL ACTION NO. 11-04-ART

UNITED STATES OF AMERICA,                                               PLAINTIFF,

V.                      **MAGISTRATE JUDGE'S**
                           **REPORT & RECOMMENDATION**

RODNEY MULLINS,                                                   DEFENDANT.

\* \* \* \* \* \* \*

The current action is the result of an indictment charging Rodney Mullins with violations of the Controlled Substances Act, 21 U.S.C. § 801 et. Seq. He now brings before the Court a Motion to Suppress [R. 23] all statements he made during an encounter with law enforcement on September 30, 2010.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The conduct which forms the basis for the indictment, and the facts implicated in the Motion to Suppress [R. 23] are as follows:

On or about September 30, 2010, a FedEx worker in Langley, Kentucky, noticed a suspicious package addressed to 'R. Mullins' and, upon opening it, discovered a number of Oxycodone tablets wrapped in a paper towel, within a cigarette package. [R. 44 at 7; R. 30 at 10]. Upon arrival at the FedEx location, Detective Dials and Trooper Cure were informed that a male had been calling to inquire whether the package had arrived, and that he was on his way to pick it up. Mullins arrived a short time later, signed for the package, and was returning to his truck when Trooper Cure conducted a traffic stop in the parking lot of the FedEx building. [R. 30

at 13]. Trooper Cure testified that since Mullins was not alone, he handcuffed Mr. Mullins in front of Mullins' body, for officer safety. [R. 44 at 11].

Detective Dials, in plain clothes wearing a concealed firearm, met Mullins in the parking lot and asked him if he would "care to step inside" the FedEx building to talk. [R. 44 at 12]. Mullins agreed and followed Dials to a room typically used by FedEx employees, where Dials explained that he was a narcotics detective with the state police, and that he knew the package Mullins just picked up contained Oxycodone. [R. 44 at 13]. According to Dials' testimony, Mullins then "blurted out that, *Well, those -- I -- I wasn't expecting that. I was expecting hydrocodone*." [Id.] (emphasis in original). Dials testified that Mullins' statement was not made in response to a question, but immediately after Dials identified himself and explained the circumstances. [R. 44 at 14].

Detective Dials remained in the employee room at FedEx, speaking with Mullins about how he could be helpful in the ongoing investigation. On two separate occasions, he allowed Mullins to use the restroom, accompanying him into the restroom without removing the handcuffs [R. 44 at 15]. Additionally, Dials repeatedly told Mr. Mullins that he was "familiar" with his prior record and knew that he was "probably listed on probation." [R. 44 at 14]. Detective Dials also advised Mullins that if he did not cooperate, he would go to jail [R. 44 at 31]. Eventually, Dials and Mullins were joined by Detective Hunter,[1] at which time "Hunter started conducting more of a - - an interview." [R. 44 at 17], which lasted for approximately three (3) hours [R. 44 at 25]. Throughout his testimony, Dials maintained that Mullins was not

---

[1] At some point after Hunter's arrival, the handcuffs were removed.

under arrest at any time [R. 44 at 17, 30; R. 30 at 15] and that Mullins "agreed to talk" [R. 44 at 30]. Miranda warnings were never given. [R. 44 at 33].

Mullins argues that any statements he made to law enforcement during his encounter with Detective Dials and Agent Hunter should be suppressed as they were made during the course of custodial interrogation in violation of his rights under Miranda. For the reasons set forth below, the Court will recommend that the motion to suppress be granted in part, and denied in part.

## II. DISCUSSION

### *1. Legal Standard*

The Fifth Amendment protects an individual's right against self-incrimination, U.S. CONST. amend. V, by requiring that the defendant be apprised of certain rights, including the right to counsel, prior to a custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 478 - 79 (1966). This safeguard applies only when a suspect is both in custody and subject to interrogation. Illinois v. Perkins, 496 U.S. 292, 296 - 97 (1990). In Miranda, the United States Supreme Court explained that 'custodial interrogation' is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

The Sixth Circuit commonly considers the following factors in deciding whether an interrogation is *custodial* in nature: (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraining on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions. United States v. Hinojosa, 606 F.3d 875, 883 (6th Cir. 2010). See also United States

3

v. Panak, 552 F.3d 462, 465 (6th Cir. 2009); United States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003); United States v. Salvo, 133 F.3d 943, 950 (6th Cir. 1998). Custody has also been defined as the functional equivalent of arrest, but "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkmer v. McCarty, 468 U.S. 420, 442 (1984). In determining whether a reasonable person would have understood that his freedom was restrained, a court must consider the totality of the circumstances surrounding the interrogation. Thompson v. Keohane, 516 U.S. 99, 112 - 13 (1995).

In turn, *interrogation* has been defined as "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300 (1980); see also United States v. Soto, 953 F.2d 263, 264 (6th Cir. 1992). As conceptualized in Miranda, interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." Innis, 226 U.S. at 299; United States v. Avery, 717 F.2d 1020, 1024 (6th Cir. 1983). In determining whether police conduct rises to the level of interrogation, "a defendant's perception of the police conduct and, as measured from the police perspective, the reasonable likelihood that such conduct would elicit an inculpatory response" is significant. Soto, 953 F.2d at 265. However, police officers "cannot be held accountable for the unforeseeable results of their words or actions, [because] the definition of interrogation can extend only to words or actions on the part of the police officers that they *should have known* were reasonably likely to elicit an incriminating response." Innis, 226 at 302 (emphasis in original).

*2. Analysis*

The first issue to be considered is whether Mr. Mullins was in custody. Although Mullins was allegedly free to leave, his freedom of movement was restrained in a significant way. For instance, Mullins was only allowed to go to the restroom with his handcuffs on and in the

4

company of Detective Dials. Additionally, Mullins remained in handcuffs until some uncertain point in time after Detective Hunter arrived at FedEx for a more in depth interview. Trooper Cure also remained stationed in the parking lot at all times.

Moreover, Detective Dials also testified both at the initial appearance on the violation and at the suppression hearing that he advised Mullins that he would be arrested if he did not cooperate. Considering the totality of the circumstances in this action – that Trooper Cure was stationed outside, that Mullins remained in handcuffs while interviewed by Dials, that he was unable to go to the restroom unrestrained and unaccompanied, and that he was told that if he did not cooperate he would be arrested – all indicate that Mullins was in custody. See Miranda, 384 U.S. at 476; United States v. Mahan, 190 F.3d 416, 423 (6th Cir. 1999). Having resolved the issue of custody, the Court must consider whether any of the statements made by Mr. Mullins were the result of interrogation.

Therefore, the next issue to be considered is whether Mullins' statement "I was expecting Hydrocodone" was made in response to a question or remark designed to elicit an incriminating response such that Miranda safeguards were applicable. Given the facts, Detective Dials' initial introduction falls outside the context of interrogation as envisioned by Miranda, 384 U.S. 436, and Innis, 446 U.S. 291. First, it is unlikely that at the time when he first initiated contact Dials intended to elicit *any* sort of response. Likewise, it is doubtful that Dials sought to provoke an *incriminating* response by telling Mullins who he is and why he wanted to speak in private.[2]

In short, Mullins' statement regarding Hydrocodone was not a response to or the product

---

[2] Detective Dials' self-identification is somewhat akin to routine booking procedures which do not constitute interrogation. See Avery, 717 F.2d at 1024 - 25. See also United States v. Hart, 2009 WL 2552347, at *12 (W.D. Ky. 2009) (Noting that "the 'routine booking exception' does not require the police to inform a suspect of his rights under *Miranda* before inquiring about certain biographical, or 'pedigree,' data necessary to process the arrest or detention.").

of words or actions reasonably likely to elicit an incriminating response. As such, Miranda safeguards were not applicable at the time Defendant Mullins voluntarily 'blurted out' that he was expecting Hydrocodone rather than Oxycodone because he was not subject to interrogation or its functional equivalent. Therefore, this statement should not be suppressed.

The last issue to be addressed is whether Mullins was subsequently subject to interrogation such that Detective Dials and/or Detective Hunter was required to advise him of his rights pursuant to Miranda. Clearly, Mullins was subject to interrogation. Although Dials did not provide specific testimony as to the questions he asked and the statements he made, he discussed at length the threat of arrest, potential trafficking charges, violation of supervised release, and the benefit of forming a level of cooperation. [R. 30; R. 44]. After his arrival, Detective Hunter even recorded some of the statements without notifying Mullins that they could potentially be used against him. [R. 44 at 27]. Additionally, for most of the duration of the interview Mullins was handcuffed. These circumstances indicate a measure of 'compulsion' beyond mere custody. Innis, 446 U.S. at 299.

The Court finds that Defendant Mullins was subject to a custodial interrogation. At that time, Detective Dials and/or Detective Hunter was obligated to inform Mr. Mullins of his Miranda rights. Failure to advise Defendant of his rights renders any statements made to Detectives Dials and Hunter after the initial encounter subject to suppression.

### III. CONCLUSION

For the reasons set forth above, the undersigned hereby RECOMMENDS THAT:

(1)  Defendant's Motion to Suppress [R. 23] as it relates to the statement "I was expecting Hydrocodone" be DENIED; and

(2)  Defendant's Motion to Suppress [R. 23] as it relates to all remaining statements

6

made by Defendant to Detective Dials and Detective Hunter be GRANTED.

The parties are referred to 28 U.S.C. § 636(b)(1)(C), and Fed. R. Crim. P. 59(b)(2), for a review of the rights to object to the undersigned's recommendation.

Signed: March 21, 2011

Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge